1655

John M. TAYLOR, Respondent v. HOPPIN' JOHNS, INC.
and John Wilson, Appellants.

(405 S.E. (2d) 410)

Court of Appeals

*William Howell Morrison* and *Mary Leigh Arnold* of *Holmes & Thomson,* Charleston, *for appellants.*

*Timothy D. Scrantom* and *Cherie L. Wilson* of *Nelson, Mullins, Riley & Scarborough,* and *Andrew W. Gowder, Jr.* of *Wise & Cole,* Charleston, *for respondent.*

Heard Feb. 18, 1991.

Filed May 6, 1991.

*Per Curiam:*

This case involves alleged servicemark infringement. John M. Taylor owns and operates a culinary bookstore in downtown Charleston under the name "Hoppin' Johns." He also consults with the restaurant industry and occasionally writes culinary articles under the pseudonym "Hoppin' John." John Wilson is an officer and sole shareholder in Hoppin' Johns, Inc., a corporation formed to operate a nightclub in North Charleston. The nightclub was named "Hoppin' Johns" and opened for business on March 22, 1989. Taylor filed suit on March 24 alleging (1) common law servicemark infringement, (2) common law unfair competition, (3) statutory unfair trade practices, and (4) violation of statutory trademark laws. He sought a permanent injunction preventing the nightclub's use of the name "Hoppin' Johns" and damages. After a nonjury trial, the trial court granted the request for a permanent injunction and also awarded the following relief: (1) $3,000 damages for trademark infringement, (2) $9,000 damages for violation of common law unfair trade practices, (3) $9,000 damages for violation of the South Carolina Unfair Trade Practices

Act, (4) $9,000 damages for violation of *S.C. Code Ann.* Section 39-15-210 (1976), (5) $9,000 damages for violation of the South Carolina Unfair Trade Practices Act, (4) $9.000 damages for violation of *S.C. Code Ann.* Section 39-15-220 (1976), and (6) attorney fees and costs. The damages were cumulative. Hoppin' Johns, Inc. and John Wilson appeal.

The complaint has legal and equitable aspects as Taylor seeks both a permanent injunction and damages.

Characterization of this action depends on the "main purpose" in bringing the action. *Insurance Financial Services, Inc. v. South Carolina Insurance Co.*, 271 S.C. 289, 247 S.E. (2d) 315 (1978); *Johnson v. South Carolina National Bank*, 285 S.C. 80, 328 S.E. (2d) 75 (1985). From our review of the complaint we conclude the main purpose of this action was to obtain an injunction to prevent further use of the name "Hoppin' Johns," which Taylor claimed was his servicemark. Since an injunction is an equitable remedy, we will take our own view of the evidence.

## I.

We first address the trial court's order finding the appellants violated *S.C. Code Ann.* Sections 39-15-210 and -220 (1976). The trial court awarded a total of $18,000 damages on these two causes of action. We reverse those portions of the trial court's order.

## A.

Section 39-15-210 provides for civil liability for fraudulent registration of a mark. A person who obtains registration of a mark by "false or fraudulent representation or declaration" is liable for "all damages sustained in consequence of such filing or registration."

Taylor contends the appellants filed a fraudulent application with the South Carolina Secretary of State for registration of the servicemark. Taylor had not previously registered the servicemark with the Secretary of State. On March 30, 1989, the appellants submitted an application for registration of the mark. On the application it was noted the appellants were "aware of a bookstore in a other [sic] city (Charleston) that uses the name Hoppin' John's." Taylor contends the application was fraudulent because it did not reveal litigation had al-

ready commenced between the parties, and it implied the two locations were distant whereas they are only a few miles apart.

The application did reveal the existence of Taylor's purported interest. More importantly, however, there is no evidence in the record to support the award of $9,000 damages. The clear language of the statute indicates damages must be "sustained in consequence of such filing or registration." Taylor presented no evidence on this point. All of his evidence on damages related to a time before the application for registration was submitted. Accordingly, the trial court erred in finding liability and awarding damages under this statute.

### B.

The trial court also held the appellants violated the provisions of Section 39-15-220 and awarded damages of $9,000 under this cause of action.

Section 39-15-220 addresses civil liability for certain uses of a registered mark. The language of the statute states the section covers registered marks. Taylor never registered his servicemark. Accordingly, Taylor has no basis to seek recovery under this statute. The trial court erred in finding liability and awarding damages under this section.

### II.

Additionally, the trial court held the appellants liable to Taylor under theories of common law trademark infringement, common law unfair trade practices, and violation of the South Carolina Unfair Trade Practices Act. It granted Taylor a permanent injunction and awarded him a total of $21,000 damages under these three causes of action.

The basis of the trial court's finding under these three causes of action was that the appellants infringed upon and appropriated Taylor's servicemark to the detriment of Taylor and his business. In other words, since the trial court found trademark infringement, it also found unfair competition and unfair trade practices based upon the same conduct. The trial court awarded separate cumulative damages under each cause of action. As one ground of error, the appellants contend the court awarded double recovery of damages.

We hold that the trial court did grant double recovery of

damages under the theories of unfair competition and violation of the South Carolina Unfair Trade Practices Act and that this was error. The court awarded Taylor $3,000 damages for trademark infringement based upon loss of profits. The court also awarded $9,000 for common law unfair competition and $9,000 for statutory unfair trade practices based upon the same conduct. The court gave no explanation for the calculation of these damages. Taylor contends these damages are for loss of reputation. Simply stated, there is no credible evidence in the record to support this argument. The two awards violate the basic rule of law that there can be no double recovery for a single wrong and a plaintiff may recover his actual damages only once. *Inman v. Imperial Chrysler-Plymouth, Inc.,* — S.C. —, 397 S.E. (2d) 774 (Ct. App. 1990). The single alleged wrong in this case was trademark infringement. Assuming the appellants were liable under that theory, the damage awards under the unfair competition and unfair trade practices causes of action cannot stand because such awards constitute double recovery. The trial court's order is reversed on those causes of action.

## III.

As stated, under the common law trademark infringement cause of action, the trial court granted a permanent injunction preventing further use by the appellants of the servicemark, "Hoppin' Johns," and awarded Taylor $3,000 for loss of profits.

Taylor has operated his bookstore in downtown Charleston since late 1986 and used the mark "Hoppin' Johns" for his bookstore as well as his mailing lists. He has also utilized or referred to the name in culinary articles in newspapers or magazines. Additionally, he has appeared on local television shows under the name.

John Wilson began using the mark for his nightclub in early 1989. The record indicates the name "Hoppin' Johns" was suggested to Wilson by an interior decorator who was helping refurbish the nightclub. There is no indication Wilson was actually aware of Taylor's bookstore before the name for the club was chosen.

Taylor testified he first became aware of the club in late February, 1989. He thereafter received several inquiries from friends or associates as to whether he had invested in or

opened a nightclub. In March, print and radio advertising for the club began in the area. Taylor testified he began receiving phone calls at his bookstore inquiring about the club. Apparently, directory assistance gave the bookstore number in response to inquiries. There was also evidence in the record of one misdirected piece of mail meant for Taylor's bookstore but addressed to the nightclub street address.

Taylor claimed he sustained a loss of profits because of the appellants' use of his mark. He asserted his telephone and overall sales decreased in the first quarter of 1989 in comparison to previous years. While he attributes no sales decline in January 1989 to the appellants, he testified his retail sales declined three to four thousand dollars in late February and March 1989 due to advertising and opening of the club.

Taylor's accountant also testified. She stated Taylor had a loss from operations in the first quarter of 1989 of $3,283. This figure was taken from an exhibit which showed a comparison of Taylor's net profits from the first quarter in 1987, 1988, and 1989. Taylor operated at a net loss for the first quarter each year. In 1987, his first quarter sales were $9,697 and his net loss was $2,813. In 1988, his first quarter sales were $13,371 and his net loss was $2,813. In 1988, his first quarter sales were $13,371 and his net loss was $2,166. In 1989, his first quarter sales were $13,102 and his net loss was $3,283. We also note his expenses from operations increased approximately $1,000 each year from 1987 through 1989.

The trial court awarded $3,000 damages to Taylor for trademark infringement. The appellants assert Taylor failed to produce evidence of lost profits to support the award. Taylor testified about decreased sales and his accountant testified to a net loss. However, when the actual figures are compared in 1987, 1988, and 1989 we find an award of $3,000 in lost profits due to actions of the appellants is not supported by the evidence. While Taylor is not required to prove damages to a mathematical certainty the proof must rise above speculation. No effort was made to analyze the business trend of the bookstore over the three years to reflect the proportionate increase of sales and/or expenses. Without such a consideration an award of $3,000 for lost profits is

based upon only the testimony of decreased retail sales and overall net loss. However, Taylor sustained a net loss each year by his own figures. While it may be argued his net loss in 1989 would have been less, the record does not support the amount of the award given by the court.

The appellants argue a finding of trademark infringement cannot be sustained because Taylor has not demonstrated a likelihood of confusion by the public. Likelihood of confusion has been found to exist in trademark cases "when consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." *Scott Paper Co. v. Scott's Liquid Gold, Inc.*, 589 F. (2d) 1225, 1229 (3d Cir. 1978). The appellants agree the servicemarks are identical in spelling and pronunciation although different in appearance. Taylor has demonstrated some actual confusion by virtue of the testimony of people who inquired about his relationship with the club and the misdirected piece of mail. There was also the evidence of phone calls to the bookstore inquiring about the club. There is some evidence of a likelihood of confusion. We therefore affirm the finding of trademark infringement and the granting of the injunction.

## IV.

The appellants contend as a final argument that the trial court erred in entering judgment against John Wilson personally. Since we have already dealt with the damages issues, the only remaining matter of consequence is the injunction. The trial court does not address this matter. The appellants made no post-trial motion under SCRCivP 59(e) to alter or amend the order to address the issue. The issue is not preserved for appellate review. *Talley v. S.C. Higher Education Tuition Grants Commission*, 289 S.C. 483, 347 S.E. (2d) 99 (1986).

We affirm that portion of the trial court's order which finds common law trademark infringement and grants an injunction. We reverse the remainder of the order for the reasons stated.

Affirmed in part; reversed in part.