685 S.E.2d 828

**MILLIKEN & COMPANY, Appellant/Respondent,**

v.

**Brian MORIN, Respondent/Appellant.**

**No. 4610.**

Court of Appeals of South Carolina.

Heard March 4, 2009.

Decided Aug. 20, 2009.

Rehearing Denied Nov. 19, 2009.

2

Charles E. Carpenter, Jr., and Carmen V. Ganjehsani, both of Columbia;  and John C. Glancy, L. Gray Geddie, Jr., and Phillip A. Kilgore, all of Greenville, for Appellant–Respondent.

C. Mitchell Brown, of Columbia;  and William S. Brown, Giles M. Schanen, Jr., and Dowse B. Rustin, IV, all of Greenville, for Respondent–Appellant.

4

SHORT, J.

Milliken & Company (Milliken) appeals from the circuit court's order, arguing the court erred in denying the equitable relief it requested because the jury found Brian Morin breached the covenants in his employment agreement and the verdict was only an award of nominal damages. In his cross-appeal, Morin argues the circuit court erred in finding the inventions assignment and confidentiality provisions of the employee agreement are enforceable. We affirm.

## FACTS

Morin obtained his Ph.D. in Experimental Condensed Matter Physics from Ohio State University in 1994, and on April 10, 1995, he began working for Milliken as a research physicist. As a condition of his employment with Milliken, he was required to sign a written Associate Agreement (Agreement). Morin was promoted to Senior Research Physicist on July 13, 1998. While working at Milliken, he went to a composites conference in California that Milliken paid for him to attend to get new applications for their products. Afterwards, Morin began developing an idea to create a high modulus multifilament polypropylene fiber, which is a fiber that has a high resistance to stretching. Morin testified there was a possible five billion dollar market for the fiber, but Milliken refused to support research in multifilament fiber manufacturing when he presented it with the idea. Milliken does not manufacture or sell any multifilament fiber to any third parties. Nor does it possess any production equipment for the extrusion of multifilament fiber.

Morin resigned from Milliken on May 17, 2004, and registered his company, Innegrity, LLC, with the South Carolina Secretary of State the same week.[1] On November 5, 2004, Morin filed his patent for Innegra–S, a high modulus multifilament polypropylene fiber, and immediately assigned the patent to Innegrity. To promote his new fiber, Morin gave a presentation at InnoVenture in Greenville, South Carolina, in

---

1. Morin testified he is the president of Innegrity and owns thirty percent of the company. He also testified there are thirty-eight other investors.

May 2005.[2] On June 21, 2005, Milliken's counsel sent Morin a letter demanding he stop his work with the Innegra product because the activity violated Morin's Agreement with Milliken. Furthermore, Milliken asserted Morin's invention, Innegra–S, belonged to Milliken pursuant to the Agreement. In a response letter, Morin claimed he did not experiment with or develop any of his technology using Milliken's equipment, information, or time.[3] The letter also proposed a meeting with Milliken to discuss possible resolutions; however, Milliken did not respond and instead filed an action against Morin and Innegrity.

Milliken's Amended Complaint alleged nine causes of action: (1) breach of contract (inventions assignment provision); (2) breach of contract (covenant not to compete); (3) breach of contract (confidentiality provision); (4) misappropriation of trade secrets; (5) unfair trade practices; (6) breach of the implied covenant of good faith and fair dealing; (7) breach of contract accompanied by a fraudulent act; (8) conversion; and (9) breach of the duty of loyalty. The causes of action for conversion and violation of the South Carolina Unfair Trade Practices Act were the only causes of action against both Morin and Innegrity. In his Answer to Milliken's Amended Complaint, Morin asserted nine defenses including claims that the Agreement was unenforceable and was void under public policy. Morin filed an Amended Answer, asserting five counterclaims: (1) breach of contract; (2) breach of contract accompanied by a fraudulent act; (3) breach of the implied covenant of good faith and fair dealing; (4) fraud and misrepresentation; and (5) violation of the South Carolina Unfair Trade Practices Act.

Morin filed a Motion for Summary Judgment arguing, among other things, the Agreement's covenant not to compete provision, the inventions assignment provision, and the confidentiality provision were unenforceable. The motion was denied. Shortly before trial, Milliken voluntarily dismissed

---

2. InnoVenture is a convention where entrepreneurial companies can make presentations to prospective investors.

3. Morin also testified he told Milliken his company would not interfere with Milliken's business, and he planned for Innegrity to be a customer of and supplier to Milliken.

four of its causes of action with prejudice, including its two causes of action against Innegrity for conversion and violation of the South Carolina Unfair Trade Practices Act. Morin filed a Motion for Judgment as a Matter of Law, asserting Milliken's claim for the assignment of several patents currently held by Innegrity fails as a matter of law because Innegrity was dismissed from the case.[4] After Milliken rested its case, Morin moved for a directed verdict on all causes of action and the relief sought by Milliken relating to the patents and patent applications owned by Innegrity. The court denied the motion.

At the conclusion of the trial, only four causes of action against Morin were submitted to the jury: (1) breach of the inventions assignment provision of the Agreement;[5] (2)

---

4. The court did not rule on Morin's motion at that time, stating: "I think we can take care of that matter after we take care of the jury. That would be something that I can hear you on at the end of the verdict. It might not even be an issue, who knows. But if it is, then we will address that later."

5. Milliken's "Inventions Assignment" provision is found in section A of the Agreement and is as follows:

   With respect to Inventions made, authored and conceived by me, either solely or jointly with others, (1) during my employment, whether or not during normal working hours or whether or not at Milliken's premises; or (2) within one year after termination of my employment; I will:
   a. Keep accurate, complete and timely records of such Inventions, which records shall be Milliken property and be retained on Milliken's premises.
   b. Promptly and fully disclose and describe such Inventions in writing to Milliken.
   c. Assign (and I do hereby assign) to Milliken all of my rights to such Inventions, and to applications for letters patent, copyright registrations and/or mask work regulations in all countries and to letters patent, copyright registrations and/or mask work registrations granted upon such Inventions in all countries.
   d. Acknowledge and deliver promptly to Milliken (without charge to Milliken but at the expense of Milliken) such written instruments and to do such other acts as may be necessary in the opinion of Milliken to preserve property rights against forfeiture, abandonment or loss and to obtain, defend and maintain letters patent, copyright registrations and/or mask work registrations and to vest the entire right and title thereto in Milliken.
   NOTICE: This is to notify you that paragraph A of this Milliken "Associate Agreement" you are being asked to sign as a condition of your employment does not apply to an Invention for which no

breach of the confidentiality provision of the Agreement;[6] (3) violation of the South Carolina Trade Secrets Act; and (4) breach of the duty of loyalty. The jury found Morin liable for breach of the Agreement, under its inventions assignment and confidentiality provisions, and awarded Milliken $25,324 in actual damages.[7] The verdict form submitted to the jury contained a single blank for the jury to award actual damages should it find Morin breached the Agreement. Neither party objected to the form or requested a more detailed form. The verdict form did not specify which action by Morin constituted a breach of the Agreement, or what particular invention or confidential information was involved in Morin's breach of the Agreement.

Milliken filed a Motion for Equitable Relief and to Alter or Amend Judgment, and Morin filed a Motion for Judgment Notwithstanding the Verdict, or in the Alternative, for a New

---

equipment, supplies, facility or proprietary information of Milliken was used and which was developed entirely on your own time, and (1) which does not relate (a) directly to the business of Milliken or (b) to Milliken's actual or demonstrably anticipated research or development, or (2) which does not result from any work performed by you for Milliken.

In paragraph 4, the Agreement defines "Inventions" as:

"discoveries, improvements and ideas (whether or not shown or described in writing or reduced to practice), mask works (topography or semiconductor chips) and works of authorship, whether or not patentable, copyrightable or registerable, (1) which relate directly to the business of Milliken, or (2) which relate to Milliken's actual or demonstrably anticipated research or development, or (3) which result from any work performed by me for Milliken, or (4) for which any equipment, supplies, facility or Trade Secret or Confidential Information of Milliken is used, or (5) which is developed on any Milliken time."

6. Milliken's "Confidentiality" provision is found in section B of the Agreement and is as follows:

"I also agree not to use, disclose, modify or adapt any Confidential Information as defined in paragraph 3 hereinabove until three (3) years after the termination of my employment except as authorized in the performance of my duties for Milliken."

In paragraph 3, the Agreement defines "Confidential Information" as:
"all competitively sensitive information of importance to and kept in confidence by Milliken, which becomes known to me through my employment with Milliken and which does not fall within the definition of Trade Secret above."

7. The jury also found for Milliken on Morin's counterclaims.

Trial. After a hearing on the motions, the court denied the motions of both parties. Milliken appeals and Morin cross-appeals.

## STANDARD OF REVIEW

An action for breach of contract based on an employment agreement is an action at law. *King v. PYA/Monarch, Inc.*, 317 S.C. 385, 388, 453 S.E.2d 885, 888 (1995); *Moore v. Crowley & Assoc., Inc.*, 254 S.C. 170, 171, 174 S.E.2d 340, 341 (1970). In an action at law, on appeal of a case tried by a jury, the jurisdiction of this court extends merely to correct errors of law. *Townes Assocs., Ltd. v. City of Greenville*, 266 S.C. 81, 85, 221 S.E.2d 773, 775 (1976). The factual findings of the jury will not be disturbed on appeal unless the record does not contain any evidence that supports the jury's findings. *Id.*

## LAW/ANALYSIS

### I. Milliken's Appeal

Milliken argues the circuit court erred in refusing to grant the equitable relief it requested because the jury found Morin breached the covenants in his Agreement and the verdict was only an award of nominal damages. We disagree.

Generally, equitable relief is available only where there is no adequate remedy at law. *Santee Cooper Resort, Inc. v. S.C. Pub. Serv. Comm'n*, 298 S.C. 179, 185, 379 S.E.2d 119, 123 (1989). "An 'adequate' remedy at law is one which is as certain, practical, complete and efficient to attain the ends of justice and its administration as the remedy in equity." *Id.* The party seeking an injunction must prove it has no adequate remedy at law. *Strategic Res. Co. v. Bcs Life Ins. Co.*, 367 S.C. 540, 544, 627 S.E.2d 687, 689 (2006).

In its Amended Complaint, Milliken requested actual damages and permanent injunctive relief on its claims for breach of contract. At trial, Milliken presented evidence of past and future money damages it allegedly suffered as a result of Morin's breach of the Agreement, specifically $1,403.26 in travel expenses for the conference Morin attended in California; $81,080.00 in benefits and salary compensation; $3,862.85

in paid unused vacation days; and an estimated $60 to $65 million in future lost profits from the fiberglass market.

The verdict form submitted to the jury contained a single blank to award actual damages should the jury find Morin breached the Agreement under either the inventions assignment provision or the confidentiality provision. Milliken did not object to the form; however, Milliken asked the judge to charge the jury on nominal damages and suggested $100.00 as a symbolic nominal amount. In his charge to the jury on actual and nominal damages, the judge did not charge the jury with a specific amount for nominal damages, but stated "they have been referred to as a trivial or trifling sum." Neither party objected to the charge. The verdict form did not specify whether the damages were for Morin's breach of the inventions assignment provision, the confidentiality provision, or both.

The jury awarded Milliken $25,324.00 in actual damages, which is far from the $100.00 amount Milliken requested as an example of nominal damages. Also, the amount of damages awarded by the jury appears to be a specific amount that was calculated by the jury in some manner, as opposed to a general amount such as $25,000.00. Thus, we find Milliken had an adequate remedy at law, and the trial judge correctly found Milliken was not entitled to equitable relief.[8]

## II. Morin's Appeal

In his cross appeal, Morin argues the circuit court erred by finding the inventions assignment and confidentiality provisions of Milliken's Agreement were enforceable.[9] We disagree.

---

8. We do not reach the merits of Milliken's remaining issues because this issue is dispositive of the case. *Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (stating that if an appellate court's ruling on a particular issue is dispositive of an appeal, rulings on remaining issues are unnecessary).

9. Morin also argues that if one provision is found to be unenforceable, the whole Agreement is unenforceable; however, we need not address this issue because we find both provisions to be enforceable. Furthermore, Morin raises this argument for the first time on appeal; thus, the issue is not preserved. *Pye v. Estate of Fox*, 369 S.C. 555, 564, 633 S.E.2d 505, 510 (2006) ("It is well settled that an issue cannot be raised

On appeal of the denial of a motion for a directed verdict or JNOV, this Court applies the same standard as the trial court and views the evidence in the light most favorable to the non-moving party. *Gadson ex rel. Gadson v. ECO Servs. of S.C., Inc.*, 374 S.C. 171, 175–76, 648 S.E.2d 585, 588 (2007). "An appellate court will only reverse the lower court's ruling when there is no evidence to support the ruling or when the ruling is controlled by an error of law." *Id.*

In South Carolina, restrictive covenants not to compete are generally disfavored and will be strictly construed against the employer. *Rental Uniform Serv. of Florence, Inc. v. Dudley,* 278 S.C. 674, 675, 301 S.E.2d 142, 143 (1983). The enforceability of a covenant not to compete depends on whether it is: (1) necessary for the protection of the legitimate interest of the employer; (2) reasonably limited in its operation with respect to time and place; (3) not unduly harsh and oppressive in curtailing the legitimate efforts of the employee to earn a livelihood; (4) reasonable from the standpoint of sound public policy; and (5) supported by valuable consideration. *Id.* at 675–76, 301 S.E.2d at 143; *Carolina Chem. Equip. Co. v. Muckenfuss,* 322 S.C. 289, 293, 471 S.E.2d 721, 723 (Ct.App.1996).

In *Muckenfuss,* this court determined a covenant not to divulge trade secrets had the effect of a covenant not to compete, and thus, was subject to the same strict scrutiny. *Id.* at 294, 471 S.E.2d at 723. In making its decision, the court found the section substantially restricted Muckenfuss's competitive employment activities by preventing him from using the general skills and knowledge he acquired at Carolina Chemical; was unlimited in time and territory; was far greater than necessary to protect any legitimate business interest; and was unreasonable from the standpoint of public policy because of its effects on both the employee and the competitive business environment. *Id.* at 294–95, 471 S.E.2d at 723–24. The court also noted the provision defined trade secrets "so broadly that virtually all of the information Muckenfuss acquired during his employment would fall within its definition." *Id.* at 296, 471 S.E.2d at 725.

Also, in *Nucor Corporation v. Bell,* 482 F.Supp.2d 714, 729–30 (D.S.C.2007), the South Carolina District Court found a non-disclosure agreement was subject to the same requirements as a non-compete covenant. Using this standard, the court determined the agreement was unenforceable because it defined " 'confidential information' so broadly that virtually all of the information Bell acquired during his employment would fall within its definition" and "forbid[ ] Bell from engaging in any employment similar to his employment with Nucor." *Id.*

██ Morin asserts that both the inventions assignment and confidentiality provisions should be scrutinized under the standards of a covenant not to compete because both provisions were overly broad; harsh and oppressive in curtailing his legitimate efforts to earn a livelihood; inappropriate as they prevent him from using the general skills and knowledge he acquired at Milliken; and unreasonable from the standpoint of sound public policy. However, the inventions assignment provision limited the inventions to those made, authored, and conceived by Morin, either solely or jointly with others, during his employment, whether or not during normal working hours or whether or not at Milliken's premises, or within one year after termination of his employment with Milliken. It did not apply to inventions for which no equipment, supplies, facility, or proprietary information of Milliken were used; that were developed entirely on an employee's own time; that did not relate directly to the current or anticipated business of Milliken; or that were not the result of any work performed for Milliken. Thus, the inventions assignment provision was narrowly drafted to restrict the category of inventions that were assigned to Milliken to those related to Milliken's business or research, or that were created using Milliken's resources. Furthermore, the inventions assignment provision was limited to one year and to subject matter that Morin worked on or had knowledge of during his employment with Milliken.

██ Milliken's confidentiality provision limits the information to all competitively sensitive information of importance to and kept by Milliken for three years.[10] The three-year provi-

---

10. The confidentiality provision is limited to three years, and the inventions assignment provision is limited to one year after employ-

sion did not prohibit Morin from disclosing or using any and all information he learned working at Milliken, or using the general knowledge and skills he learned while working there. Furthermore, Morin testified he could have obtained other jobs without violating the confidentiality provision. Thus, the confidentiality provision did not substantially restrict Morin's competitive employment activities.

Additionally, Morin argues the provisions were unenforceable because they were unlimited in territory. In *Dudley*, our supreme court found a "geographic restriction is generally reasonable if the area covered by the restraint is limited to the territory in which the employee was able, during the term of his employment, to establish contact with his employer's customers." *Dudley*, 278 S.C. at 676, 301 S.E.2d at 143. Furthermore, "[w]hile 'the general test is that contractual prohibitions must be geographically limited to what is reasonably necessary to protect the employer's business ... [p]rohibitions against contacting existing customers can be a valid substitute for a geographic limitation.' " *Rockford Mfg., Ltd. v. Bennet*, 296 F.Supp.2d 681, 689 (D.S.C.2003) (quoting *Wolf v. Colonial Life and Accident Ins. Co.*, 309 S.C. 100, 109, 420 S.E.2d 217, 222 (Ct.App.1992)). Here, the provisions were limited to competitors of Milliken, which is reasonably necessary to protect Milliken's business. Therefore, we find the trial judge correctly found the confidentiality and inventions assignment provisions of Milliken's Associate Agreement were enforceable.

## CONCLUSION

Therefore, we affirm the circuit court's denial of Milliken's request for equitable relief and the circuit court's finding that the inventions assignment and confidentiality provisions of Milliken's Associate Agreement are enforceable.

**AFFIRMED.**

THOMAS and GEATHERS, JJ., concur.

---

ment. In *Dudley*, the court found a three-year time restraint was not unreasonable. *Dudley*, 278 S.C. at 676, 301 S.E.2d at 143.