**CALLAWAY GOLF COMPANY,
Plaintiff/Defendant–in–
Counterclaim,**

v.

**DUNLOP SLAZENGER GROUP AMERICAS, INC., d/b/a Maxfli, Defendant/Plaintiff–in–Counterclaim.**

No. CIV.A.01–669–KAJ.

United States District Court,
D. Delaware.

Dec. 1, 2003.

Jack B. Blumenfeld, Morris, Nichols, Arsht & Tunnell, Wilmington, DE, for Plaintiff.

David J. Ferry, Jr., Ferry, Joseph & Pearce, P.A., Wilmington, DE, for Defendant.

## MEMORANDUM ORDER

JORDAN, District Judge.

## I. INTRODUCTION

This is a false advertising case brought by Callaway Golf Company ("Callaway") against Dunlop Slazenger Group Americas, Inc., d/b/a Maxfli ("Dunlop") under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).[1] Currently before the Court is a motion by Dunlop for leave to amend its counterclaim (D.I.91), and Callaway's motion to dismiss, or, in the alternative, to strike certain counterclaims (D.I. 196; renewed D.I. 244). The court has jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

## II. BACKGROUND

On October 3, 2001, Callaway brought suit against Dunlop, alleging that certain Dunlop golf balls infringed Callaway's U.S. Patent No. 6,213,898 ("the '898 patent"). (D.I.1.) In its answer to Callaway's complaint, filed on October 15, 2001, Dunlop denied infringement and brought a counterclaim alleging misappropriation of Dunlop's trade secrets. (D.I.5.) It also asserted claims for declaratory relief. (Id.) On November 16, 2001, the Court entered a Scheduling Order that set January 30, 2002 as the deadline for amending or supplementing the pleadings. (D.I.15.) On that date, Dunlop filed a motion to amend its counterclaim to include an additional allegation that Callaway had engaged in inequitable conduct before the patent office. (D.I.41.) The parties also entered into a stipulation, which was approved on January 31, 2002, to extend the deadline to file motions for leave to amend until February 6, 2002. (D.I.40.) On February 6, 2002, Callaway filed a motion to amend its complaint to include an allegation against Dunlop for false advertising. (D.I.45.) The Court granted both Dunlop's and Callaway's motions to amend. (See D.I. 41, 45.)

Later, the parties joined in another stipulation whereby Dunlop's amended counterclaim was deemed to be withdrawn and Callaway's amended complaint was to be deemed the only one of the two amended pleadings filed. (D.I.60.) Pursuant to the court's approval of the stipulation, Dunlop was granted "leave to refile its amended counterclaims (and any motions relating thereto) as part of its Answer to Callaway's Amended Complaint" on or before March 5, 2002.[2] (Id.) On March 5, 2002, rather than filing an answer to Callaway's amended complaint,[3] Dunlop filed a motion for a more definite statement.[4] (D.I.62.)

## III. DISCUSSION

### A. *Dunlop's Motion for Leave to Amend its Counterclaim*

Dunlop brought this motion for leave to amend its counterclaim, on May 8, 2002, to include an allegation that Callaway was negligent in hiring, retaining and training and/or supervising former Dunlop employees. (D.I.91.) Callaway opposes Dunlop's motion because it claims that Dunlop, has

---

1. Callaway originally brought suit against Dunlop for patent infringement. (See D.I. 1.) However, the court approved a stipulation on November 12, 2003 whereby Callaway agreed to dismiss Count I of its Amended Complaint against Dunlop for patent infringement (see D.I. 45 at ¶¶ 6–10) in exchange for Dunlop's agreement to dismiss Counts VI and VII of its Amended Counterclaim (see D.I. 236 at ¶¶ 64–82). (D.I.287.) The only claim remaining in the complaint is for false and/or misleading advertising (Count II). (Id.)

2. The stipulation was filed on March 4, 2002 and approved on March 5, 2002, the same day Dunlop's amended counterclaim was due. (D.I.60.)

3. Dunlop filed its amended answer and counterclaim on January 24, 2003. (D.I.236.)

4. Dunlop filed a motion to withdraw, without prejudice, its motion for a more definite statement on October 30, 2002. (D.I.216.)

failed to show "good cause" under Fed. R.Civ.P. 16(b) to modify the court's scheduling order. (D.I. 111 at 4–6.) Specifically, it asserts that "the court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension." Rule 16 Advisory Comm. Notes (1983 Amend.). Callaway further argues that it would be unfairly prejudiced under Fed.R.Civ.P. 15(a) if Dunlop is granted leave to amend its counterclaim because it did not have time to take the discovery necessary to defend the claim prior to the close of the discovery period,[5] and it might need to obtain an expert witness, even though the time for expert reports has passed. (*Id.* at 6–7.) Finally, Callaway asserts that Dunlop's motion for leave to amend is preempted by California's Uniform Trade Secrets Act ("CUTSA"). (*Id.* at 8–10.)

In support of its motion to amend its counterclaim, Dunlop alleges that even though its new claim is based on the same nucleus of facts giving rise to its trade secret counterclaims, it was unaware of the basis for its negligence claim until a Callaway employee produced the relevant version of a Callaway "trade secret policy" at a March 6, 2002 deposition.[6] (D.I. 91 at ¶ 9; D.I. 144 at 14.) Dunlop disputes Callaway's claim that it will be prejudiced by Dunlop's amendment to the counterclaim because it states that it "put Callaway on notice" of the negligence claims almost three months prior to the July 12, 2002 discovery deadline.[7] (D.I. 91 at ¶ 10.) Finally, Dunlop contends that its motion to amend its counterclaim is not preempted by the CUTSA. (D.I. 144 at 4–13.)

■ Callaway's invocation of the court's Scheduling Order to preclude Dunlop from amending its counterclaim is unpersuasive. First, Dunlop alleges that it was unaware of the basis for its negligence claims until the deposition of a Callaway employee on March 6, 2002, the day after the stipulated deadline for amendments. (D.I. 91 at 9; D.I. 144 at 14). Given the Supreme Court's counsel to the "lower federal courts to heed the liberal policy of amendment embodied in Rule 15(a)" *CCPI, Inc. v. American Premier, Inc.*, 967 F.Supp. 813, 815 (D.Del.1997) (citing *Foman v. Davis*, 371 U.S. 178, 181–82, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)), Dunlop has demonstrated enough under Fed.R.Civ.P. 16(b) to permit modification of the Order. Second, the Order has already been modified at least twice for the mutual benefit of both parties. As both parties have been permitted to supplement or amend the pleadings, Callaway's attempt to use the Order exclusively for its own benefit does not bear scrutiny. Furthermore, I am not persuaded that Callaway, with more than two months of discovery remaining at the time Dunlop filed its motion for leave to amend, was unduly prejudiced by Dunlop's motion for leave to amend its counterclaim, regardless of the possible need to call an additional expert witness.

On the issue of preemption, Callaway argues that CUTSA[8] generally preempts

---

5. The close of discovery was July 12, 2002. (*See* D.I. 111 at 6–7.)

6. Dunlop alleges that Callaway produced an April 2001 version of the document on February 13, 2002, but the basis of the negligence claim didn't become apparent until the November 1997 version was produced at the March 6, 2002 deposition. (D.I. 91 at ¶ 9; D.I. 144 at 14.)

7. Dunlop asserts that Callaway was notified of the new negligence claim on April 16, 2002 and responded, in a letter dated April 17, 2002 from Dunlop's counsel, that they had no objection to discovery into this matter. (D.I. 91 at ¶ 10, Ex. H.)

8. Cal Civ.Code § 3426.7(b).

common law torts based on trade secret misappropriation, and since Dunlop's proposed claim for negligent hiring, retaining, training, and supervising former Dunlop employees, which is a common law tort claim, is based on trade secret misappropriation, leave to amend would be futile because it is preempted by the CUTSA. (D.I. 111 at 8–10.) For reasons that will be discussed in the following section, I decline to hold that Dunlop's negligence claim is preempted.

Accordingly, without making a judgment on the merits of the claims presented in the amended counterclaim, and in the absence of evidence of "undue delay, bad faith or dilatory motive on the part of [Dunlop], undue prejudice to [Callaway]" or "futility of amendment" as is required under the law to defeat a motion for leave to amend, Dunlop's motion for leave to amend its counterclaim is granted. *See Trueposition, Inc., & KSI, Inc. v. Allen Telecom, Inc.*, No. Civ. A. 01–823–GMS, 2002 WL 1558531 at \*1 (D.Del. July 16, 2002) (holding that amendment was not precluded because there was no evidence of "undue delay, bad faith or dilatory motive" on the part of the movant, "undue prejudice" to the opposing party, or "futility of amendment").

## B. *Callaway's Motion to Dismiss or Alternatively to Strike Counterclaims (D.I. 196; renewed D.I. 244)*

■ Before addressing the merits of the parties' arguments, the court must determine which state's law to apply, as Dunlop's Counterclaim cites both California and South Carolina statutes as the basis for its trade secret claims. (D.I. 236 at ¶ 40.) "The conflict of laws rules to be applied by the federal court in Delaware must conform to those prevailing in Delaware's state courts." *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The Delaware state courts follow the conflicts

of law provisions in the Restatement (Second) of Conflicts ("Restatement"). *See Travelers Indem. Co. v. Lake*, 594 A.2d 38, 47 (Del.1991).

■ The counterclaim for conversion sounds in tort. According to the Restatement, "[t]he rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence." Restatement § 145. The factors that determine which state has the "most significant relationship to the occurrence" include (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the location of the parties, and (d) the place where the relationship between the parties is centered. *Id.* Because the "principal location of the defendant's conduct [is] usually … given the greatest weight in determining the state whose local law determines the rights and liabilities that arise from … the misappropriation of trade values," and because all of the alleged acts by Callaway took place in California, the court will apply California law to Dunlop's conversion claim. *Id.* at comment f.

■ The unjust enrichment counterclaim is a claim for restitution. The Restatement states that "[i]n actions for restitution, the rights and liabilities of the parties with respect to the particular issue are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties." Restatement § 221. "Where the claim to restitution does not stem from any relationship between the parties," the factor that is usually of the greatest importance is "the place where the benefit of enrichment was received." *Id.* at comment d. Because the Dunlop's claim to restitution does not stem from any relationship between the parties

and the alleged benefit of enrichment was received in California, Callaway's principal place of business, the court will apply California law to Dunlop's unjust enrichment claim.

Dunlop's patent title counterclaim is based on contract interpretation and neither party has argued that the law of any particular jurisdiction regarding contracts would substantively affect the outcome of the claim. Moreover, based on the standard discussed below, I find, at least at this stage, that Dunlop has made allegations sufficient to survive a motion to dismiss under Fed. R. Civ. P 12(b)(6).

### 1. Motion to Dismiss under Fed.R.Civ.P. 12(b)(6)

Callaway argues that Dunlop's counterclaims for patent title, conversion, and unjust enrichment should be dismissed under Fed.R.Civ.P. 12(b)(6) because they are preempted under CUTSA. (D.I. 197 at 7–16.) According to Callaway, Dunlop's claims are predicated on its allegation that Callaway misappropriated its trade secrets and, therefore, should be dismissed because CUTSA preempts common law causes of action that are based entirely on the same facts that form the basis of a statutory trade secret claim.[9] (*Id.* at 10, 13–14.) Dunlop denies that CUTSA preempts its patent title, conversion and unjust enrichment claims. (D.I. 199 at 11.) In addition, Dunlop contends that it may plead in the alternative, or assert alternative recoveries, in the event that certain information does not qualify as a trade secret. (D.I. 199 at 9–11, 15.)

In analyzing a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the court must accept as true all material allegations of the complaint and it must construe the complaint in favor of the plaintiff. *See*

*Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.,* 140 F.3d 478, 483 (3d Cir.1998). "A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." *Id.* The moving party has the burden of persuasion. *See Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3d Cir.1991).

The model Uniform Trade Secret Act ("UTSA") § 7(a) contains an express preemption provision that "displaces conflicting tort, restitutionary, and other law of this State providing civil remedies for misappropriation of a trade secret." When California adopted its version of UTSA, it omitted language in § 7(a). Paragraph (a) of § 7 of CUTSA instead reads: "Except as otherwise expressly provided, this title does not supersede any statute relating to misappropriation of a trade secret or any statute otherwise regulating trade secrets." Cal. Civ.Code § 3426.7(a). Paragraph (b) states that CUTSA "does not affect (1) contractual remedies, whether or not based upon misappropriation of a trade secret, (2) other civil remedies that are not based upon misappropriation of a trade secret, or (3) criminal remedies, whether or not based upon misappropriation of a trade secret." Cal. Civ.Code § 3426.7(b).

Although CUTSA does not contain an express preemption provision similar to the preemption provision found in model UTSA § 7(a), Callaway maintains that the California legislature intended to "secure the benefit of uniformity with other state [trade secret] statutes" because CUTSA expressly provides that it "shall be applied and construed to effectuate its general

---

9. Callaway points out that Dunlop provided the same four-page answer, "which was essentially a word for word copying of the factual allegations that [Dunlop's] Counterclaim identified as the basis for the trade secret 'count,' " to interrogatories seeking the factual basis for its patent title, conversion, and unjust enrichment claims. (*Id.* at 14.)

purpose to make uniform the law with respect to the subject of this title among states enacting it." [10] (D.I. 197 at 10–11.) Callaway also contends that paragraph (a)'s use of the word "statute," instead of "statute or common law," "law," or "cause of action," indicates that CUTSA preempts California common law torts based on trade secret misappropriation. (*Id.* at 11–12.) Furthermore, Callaway asserts that since paragraphs (a) and (b) should be interpreted in a manner that gives meaning to both paragraphs, the "only way to do this is to interpret paragraph (a) as stating that CUTSA does not preempt California statutory law, and paragraph (b) as stating that CUTSA does not preempt these enumerated categories of California common law." (*Id.* at 12.) Finally, Callaway argues that the "only conclusion" that can be drawn from the different language of the three sentences in paragraph (b) "is that CUTSA does preempt non-contractual common law civil remedies that are based on misappropriation of trade secrets." (*Id.* at 13.)

Dunlop argues that because California adopted a different subsection (a), which does not address express preemption of "conflicting tort, restitutionary, and other [state law]," California "knowingly adopted different language, with an intended difference," and therefore, Callaway's assertion that the CUTSA preempts its claims for patent title, unjust enrichment and conversion is legally wrong. (*Id.* at 18.)

■■■ I am confronted here with territory largely untrodden by courts in California. Callaway readily admits that "no California state court has yet addressed the preemptive effect of the California UTSA." (D.I. 111 at 9.) *See Forcier v. Microsoft Corp.*, 123 F.Supp.2d 520, 528 n. 2 (N.D.Cal.2000) (declining to decide whether the California UTSA preempts civil remedies, other than contract remedies, that are based on misappropriation of a trade secret, in part, "because any such ruling would require the court to render an opinion on a subject that has not yet been addressed by any California state court"). However, in *Ernest Paper Products v. Mobil Chemical*, No. CV95–7918 LGB(AJWX), 1997 WL 33483520 at *8 (C.D.Cal. Dec. 2, 1997), the court stated that the preemptive holdings of several cases [11] from jurisdictions that have incorporated § 7(a) in their versions of UTSA may "properly be applied to § 3426.7(b)(2) [of CUTSA] in order to carry out the purposes of § 3426.8, 'to make uniform the law with respect to the subject of this title among states enacting it.' " The court also stated that the "California legislature did not omit § 7 entirely, but rather rewrote it, compatibly with preemptive intent." *Ernest Paper Prods.*, 1997 WL 33483520 at *9.[12]

10. Cal. Civ.Code § 3426.8.

11. *See Hutchison v. KFC Corp.*, 809 F.Supp. 68 (D.Nev.1992); *Coulter Corp. v. Leinert*, 869 F.Supp. 732, 734 (E.D.Mo.1994); *Venango River Corp. v. Nipsco Indus., Inc.*, No. 92 C 2412, 1994 WL 702759 at *8 (N.D.Ill. Dec. 15, 1994).

12. There are sound reasons to view the matter as the court did in *Ernest Paper*. If CUTSA § 3426.7(a) were interpreted to reject preemption as provided in model UTSA § 7(a), CUTSA § 3426.7(b) would be surplusage. Such an interpretation would also make meaningless the distinction made in the statute between contractual and criminal remedies, which are not affected "whether or not based upon misappropriation," and other civil remedies, which are not affected only if "not based on misappropriation." *See* CUTSA § 3426.7(b). Such a result would violate the canons of statutory construction that "all provisions of a statute are intended to have meaning and are to be given effect," *DeVries v. Acree*, 565 F.2d 577, 581 (9th Cir.1977) (*rev'd on other grounds* ), and that "[i]nterpretations that nullify statutory provisions or render them superfluous are, and should be, disfavored." *Patagonia Corp. v. Board of*

■ Dunlop argues, however, that even if its claims for patent title, conversion, and unjust enrichment are preempted by CUTSA, it may plead in the alternative, or assert alternative recoveries, in the event that certain information does not qualify as a "trade secret" under CUTSA.[13] (D.I. 199 at 9–11, 15.) Because I agree with that argument, I need not decide the matter of preemption, at least not at this point.

Although several courts have dismissed claims pled in the alternative based on the misappropriation of trade secrets,[14] the court in *Stone Castle Financial v. Friedman, Billings, Ramsey & Co.*, 191 F.Supp.2d 652, 658–659 (E.D.Va.2002) pointed out that "where courts have found preemption on a motion to dismiss, they repeatedly establish that the information in issue—as alleged—constitutes trade secrets before reaching the preemption question." [15] The court further explained that "unless it can be clearly discerned that the information in question constitutes a trade secret, the Court cannot dismiss alternative theories of relief as preempted by [Virginia's version of the uniform UTSA]." *Id.* at 659.

Here, it has not been established that the information at issue may be classified as trade secrets. At this point, the status of the information is merely a matter of allegation. (*See* D.I. 236 at ¶ 40.) Indeed, Callaway disputes that the information constitutes protected trade secrets. (*See* D.I. 243 at ¶ 40.) Callaway's separate arguments that Dunlop's information does not constitute "trade secrets" and that Dunlop's "trade secret" allegations are preempted by CUTSA are contradictory. It cannot have it both ways. Therefore, until it is shown that the information is entitled to trade secret protection, it is premature to rule whether Dunlop's claims of conversion, unjust enrichment, patent title and negligence are preempted under CUTSA.

■ Additionally, Callaway argues that Dunlop's conversion counterclaim should be dismissed under Fed.R.Civ.P. 12(b)(6) because Dunlop has alleged wrongful conversion of intellectual property rights, which are intangible, and only tangible property rights can be converted. (D.I. 197 at 16–18.) Conversion of intangible property, however, is a recognized tort in California. *See A & M Records, Inc. v.*

Governors of Federal Reserve Sys., 517 F.2d 803, 813 (9th Cir.1975). Moreover, CUTSA expressly provides that it "shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this title among states enacting it." Cal. Civ.Code § 3426.8.

13. Trade secret means:

[I]nformation, including a formula, pattern, compilation, program, device, method, technique, or process, that:
(1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and
(2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Cal. Civ.Code § 3426.1(d).

14. *See, e.g., On–Line Techs. v. Perkin Elmer Corp.*, 141 F.Supp.2d 246, 260–61 (D.Conn. 2001) (dismissing unjust enrichment claim pursuant to Connecticut Uniform Trade Secrets Act's preemption provision "because ... [the] claim does not allege any ill-gotten gains other than those resulting from the misuse of confidential information"); *Glasstech, Inc. v. TGL Tempering Sys., Inc.*, 50 F.Supp.2d 722, 730 (N.D.Ohio 1999) (finding common law claims for misuse and misappropriation of trade secrets preempted by Ohio's trade secrets act).

15. *See, e.g., Combined Metals of Chicago Ltd. P'ship v. Airtek, Inc.*, 985 F.Supp. 827, 830 (N.D.Ill.1997) (holding breach of fiduciary duty claim not preempted where underlying information may not qualify as trade secrets).

*Heilman,* 75 Cal.App.3d 554, 570, 142 Cal. Rptr. 390 (Cal.Ct.App.1977) (affirming that the "misappropriation and sale of the intangible property of another without authority from the owner is conversion"); *Swim v. Wilson,* 90 Cal. 126, 27 P. 33 (Cal.1891) (recognizing a conversion action for stolen stock, an intangible property); *Rotstein v. Cable & Wireless,* Inc., No. G027549, 2002 WL 691458 at *5 (Cal.App. 2002) (non-precedential opinion) (stating that "courts [have] expanded the scope of conversion to include 'intangibles, represented by documents, such as bonds, notes, bills of exchange, and warehouse receipts' ").

Callaway further argues that the mere existence of an intangible property right under California law does not give rise to an action for conversion because intangible property cannot be converted "except where the intangible property is merged into a legally significant document." (D.I. 204 at 9–11.) In support of this proposition, Callaway cites *Miles, Inc. v. Scripps Clinic & Research Foundation,* 810 F.Supp. 1091 (S.D.Cal.1993) (concluding that an intangible property right in scientific discoveries from the plaintiff's cells was not subject to conversion), and *G.S. Rasmussen & Associates, Inc. v. Kalitta Flying Serv., Inc.,* 958 F.2d 896 (9th Cir. 1992) (permitting a conversion action for the intangible property right represented by a Federal Aviation Administration Supplemental Type Certificate, which entitles the bearer or licensee to operate a modified aircraft). Callaway's arguments are unpersuasive. First, *Miles, Inc.* is inapposite to this case. That case dealt with a conversion claim for the right to commercialization of a cell line and the court determined plaintiff's claim was really a contract claim rather than a conversion claim. *Id.* at 1094–1098. Second, like *G.S. Rasmussen,* Dunlop's confidential and proprietary information is merged into or "embodied" in physical documents such as its

manufacturing "specifications and process manual" and United States Patent No. 6,17,024. (D.I. 199 at 22.) Therefore, Dunlop has asserted a cause of action sufficient to withstand a motion to dismiss under Rule 12(b)(6).

### 2. Motion to Strike Under Fed.R.Civ.P. 12(f)

■ Callaway also contends that the Court should strike Dunlop's counterclaims because they are "entirely redundant of [the] trade secret counterclaim and redundant of each other." (D.I. 197 at 14.) Pursuant to Fed.R.Civ.P. 12(f), a "court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Even though Dunlop's claims for conversion, unjust enrichment and patent title appear to be premised on the same factual basis as its trade secret claims, the Rule 12(f) prohibition on "redundant" pleadings "must be read in conjunction with the liberal pleading standards of Rule 8 in general and Rule 8(e)(2) in particular." *Gov't Guarantee Fund v. Hyatt Corp.,* 166 F.R.D. 321, 324 (D.Vi.1996). Under Rule 8(e)(2), plaintiffs may plead alternative theories of relief based on the same set of facts. *See S.A. Nutrasource, Inc. v. CNA Ins. Co.,* 140 F.Supp.2d 1049, 1056 (N.D.Cal.2001). Moreover, "[m]otions to strike under Rule 12(f) are not favored by the courts and they are infrequently granted. Any doubt as to the striking of matter in a pleading should be resolved in favor of leaving the pleading unstricken." *In re O.P.M. Leasing Svcs., Inc.,* 35 B.R. 854, 863–864 (Bkrtcy.S.D.N.Y.1983) (*rev'd on other grounds* ). Callaway's motion to strike will therefore be denied.

### CONCLUSION

Accordingly, IT IS HEREBY ORDERED that Callaway's motion to dismiss, or, in the alternative, to strike cer-

tain counterclaims (D.I. 196; renewed D.I. 244) is DENIED, and Dunlop's motion for leave to amend its counterclaim (D.I.91) is GRANTED.