**NUCOR CORPORATION, Plaintiff,**

v.

**John BELL and Severcorr, LLC, Defendants.**

**C.A. No. 2:06–cv–02972–PMD.**

United States District Court, D. South Carolina, Charleston Division.

Jan. 30, 2007.

J.W. Nelson Chandler, James Walker Coleman, IV, Eric D. Welsh, Parker Poe

Adams and Bernstein, Charleston, SC, William L. Rikard, Jr., Parker Poe Adams and Bernstein, Charlotte, NC, for Plaintiff.

Greg Horton, William C. Cleveland, Buist Moore Smythe and McGee, Charleston, SC, Jeffrey P. Macharg, Joseph F. Rodkey, Jr., Tarek F. Abdalla, Reed Smith Shaw and McClay, Pittsburgh, PA, Wilbur O. Colom, Colom Law Firm, Columbus, MS, for Defendants.

## *ORDER*

DUFFY, District Judge.

This matter is before the court on Defendants John Bell ("Bell") and SeverCorr, LLC's ("SeverCorr") (collectively "Defendants") Motion pursuant to Fed.R.Civ.P. 12(b)(2) and 12(b)(6) to dismiss in part Plaintiff Nucor Corporation's ("Plaintiff" or "Nucor") Complaint. Defendants seek to dismiss all claims against SeverCorr for lack of personal jurisdiction. Defendants also seek to dismiss Counts II, III, and V—X of Plaintiff's Complaint as to Bell. Plaintiff has timely responded to this motion.

## *BACKGROUND*

The facts of this case, as alleged by the amended verified Complaint, are as follows:

Nucor manufactures steel products in the United States. In 1987, Nucor hired Bell as a melt-shop manager. In 1995, Bell became the melt-shop manager of Nucor's Berkeley County plant. In May 2004, Bell became General Manager of Steelmaking Technologies. Through his long employment with Nucor, Bell became knowledgeable in almost all of Nucor's operations. Significantly, Bell was responsible for developing new steelmaking processes, including the use of vacuum degassers in the electric arc furnace ("EAF") steelmaking process.

Over the course of his employment, Bell signed at least three documents wherein he agreed, among other things, to keep secret and not use or reveal outside of Nucor, his knowledge of Nucor's confidential information, operations, and processes.[1] Under the First Confidentiality Agreement, dated October 19, 1987, Bell agreed not to disclose to any other person, or use to Nucor's detriment, any of Nucor's confidential information and trade secrets, and further agreed that his obligations under the agreement would continue after the termination of his employment with Nucor. The Second Confidentiality Agreement, dated November 23, 1999, is identical to the first. In the Third Confidentiality Agreement, dated October 29, 2005, Bell agreed not to use or disclose Nucor's confidential information for a minimum of 20 years following termination of his employment, and further agreed that for a period of one year following his termination, he would not "encourage or solicit any employee or consultant of [Nucor] to leave [Nucor] for any reason (except for the bona fide firing of Company personnel within the scope of my employment)." The Third Confidentiality agreement is, by its terms, governed by the law of Indiana. On March 31, 2006, Bell resigned his employment with Nucor.

SeverCorr is a steel company that was organized in 2004 and is building a start-up steel mill in Columbus, Mississippi. SeverCorr's mill will be similar to, and a direct competitor of, Nucor. On April 1, 2006, one day following his resignation, Bell was formally offered a position with SeverCorr as its Executive Vice President

1. All three confidentiality agreements are attached as exhibits to Plaintiff's amended verified Complaint.

and General Manager of Operations. Bell officially accepted SeverCorr's offer of employment on April 3, 2006. In this new position, Bell is responsible for, or has substantial involvement in, the management of steelmaking processes; the purchasing of raw materials and adoption of processes to minimize costs and maximize efficiencies; implementation of new technologies and processes for steelmaking; hiring and staffing decisions; decisions regarding plant and equipment selection, layout and design at SeverCorr's facility in Columbus, Mississippi; research and development; marketing and pricing; and customer specifications.

Nucor alleges that, prior to his resignation, Bell and SeverCorr conspired for Bell to take confidential information from Nucor and to solicit employees away from Nucor. On several occasions between March 30, 2006 and April 1, 2006, Bell downloaded for his and SeverCorr's use from the computer assigned to him at Nucor numerous documents containing Nucor's trade secrets and/or confidential information concerning Nucor's operations, production, processes, methodologies, and personnel maintained on the Nucor computer system. Nucor alleges that Bell has disclosed and used and will, in his position at SeverCorr, inevitably disclose and use Nucor's trade secrets and/or confidential information. Moreover, as an agent of SeverCorr, Bell has solicited and recruited several Nucor employees in South Carolina to leave Nucor and join the employ of SeverCorr.[2]

Nucor filed its verified Complaint against SeverCorr and Bell in Court of Common Pleas of Charleston County, South Carolina on October 6, 2006. Defendants removed the matter to federal district court based on diversity jurisdiction on October 17, 2006. On January 19, 2007, with the permission of the court, Nucor filed an amended verified Complaint. The amended Complaint asserts eleven causes of action: (I) Misappropriation of Trade Secrets, in violation of South Carolina Trade Secrets Act, S.C.Code § 39-8-10, et. seq.; (II) Breach of Contract; (III) Breach of Duty of Loyalty;[3] (IV) Computer Fraud and Abuse, in violation of 18 U.S.C. § 1030(a)(5)(B); (V) Tortious Interference with Relations; (VI) Unfair Trade Practices in violation of S.C.Code § 39-5-20, et. seq.; (VII) Conspiracy; (VIII) Conversion; (IX) Unjust Enrichment; and (X) Imposition of Constructive Trust; (XI) Injunctive Relief.

## *ANALYSIS*

### A. Motion to Dismiss SeverCorr for Lack of Personal Jurisdiction—Fed. R. Civ. P. 12(b)(2)

First, Defendants move to dismiss SeverCorr from this action for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. They assert that the amended verified Complaint does not allege that SeverCorr has any business contacts and/or presence in South Carolina. Moreover, they claim that there is no allegation that SeverCorr took any action by which it purposefully availed itself of this State, or that SeverCorr made any attempt to invoke the benefits and protections of South Carolina's laws.

2. The amended verified Complaint names Max A. Gurley, Barry Steel, Stanley Smith, John Campbell, and Mark Pole as former Nucor employees whom Bell has successfully recruited to join SeverCorr. (Amended Complaint ¶ 41.)

3. The breach of contract and breach of loyalty causes of action are asserted only against Defendant Bell. The remaining claims are against both Defendants.

When personal jurisdiction is challenged by the defendant, the plaintiff has the burden of showing that jurisdiction exists. *See In re Celotex Corp.,* 124 F.3d 619, 628 (4th Cir.1997). When the court decides a pretrial personal jurisdiction dismissal motion without an evidentiary hearing, the plaintiff needs only prove a prima facie case of personal jurisdiction. *Combs v. Bakker,* 886 F.2d 673, 675 (4th Cir.1989). In making this determination, the court looks to the complaint and any supporting affidavits. *See In re Celotex Corp.,* 124 F.3d at 628. Further, "the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Combs,* 886 F.2d at 676.

To validly assert personal jurisdiction over a non-resident defendant, two conditions must be satisfied. *Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan,* 259 F.3d 209, 215 (4th Cir.2001). First, the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and second, the exercise of personal jurisdiction must not "overstep the bounds" of Fourteenth Amendment due process. *Anita's New Mexico Style Mexican Food, Inc. v. Anita's Mexican Foods Corp.,* 201 F.3d 314, 317 (4th Cir.2000). South Carolina's long-arm statute has been construed to extend to the outer limits allowed by the Due Process Clause. *Foster v. Arletty 3 Sarl,* 278 F.3d 409, 414 (4th Cir.2002). "Consequently, the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one." *ESAB Group, Inc. v. Centricut, Inc.,* 126 F.3d 617, 623 (4th Cir.1997) (internal quotation marks omitted). The question, then, is whether SeverCorr has sufficient "minimum contacts with [South Carolina] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (citations omitted).

### 1. Minimum Contacts

#### a. General Jurisdiction

States may assert general jurisdiction over a defendant when the plaintiff's cause of action does not arise from the defendant's contacts with the forum state. Plaintiff must prove that the defendant's contacts are "continuous and systematic" to support the exercise of general personal jurisdiction over the defendant. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 415–16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). In this case, Nucor makes no claims that SeverCorr's contacts with South Carolina are continuous and systematic. Therefore, if jurisdiction exists, it is specific in nature and the court need not address general jurisdiction

#### b. Specific Jurisdiction

In order for specific jurisdiction to exist, the controversy must "arise out of or relate to" the defendant's contacts with the forum state. *Id.* at 414, 104 S.Ct. 1868. The Fourth Circuit has applied a three-part test when evaluating the propriety of exercising specific jurisdiction: (1) whether and to what extent the defendant "purposely availed" itself of the privileges of conducting activities in the forum state, and thus invoked the benefits and protections of its laws; (2) whether the plaintiff's claim arises out of those forum-related activities; and (3) whether the exercise of jurisdiction is constitutionally "reasonable." *Nolan,* 259 F.3d at 215–16 (citing *Helicopteros Nacionales,* 466 U.S. at 415–16, 104 S.Ct. 1868, and *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476–77, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

A defendant has minimum contacts with a jurisdiction if "the defendant's conduct and connection with the forum

State are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1990). Under this standard, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). In determining the existence of minimum contacts, the court is mindful that it must draw all reasonable inferences from both parties' pleadings, even if they conflict, in Nucor's favor. *See, e.g., Meier ex. rel. Meier v. Sun Intern. Hotels, Ltd.,* 288 F.3d 1264, 1269 (11th Cir.2002) ("[w]here the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff"); *Ticketmaster–New York, Inc. v. Alioto,* 26 F.3d 201, 203 (1st Cir.1994) (on a motion to dismiss, the court is charged with "taking facts affirmatively alleged by plaintiff as true and construing disputed facts in the light most hospitable to plaintiff"); *Precept Med. Products, Inc., v. Klus,* 282 F.Supp.2d 381, 385 (W.D.N.C. 2003) ("for the purposes of a Rule 12(b)(2) motion, the Court will accept the Plaintiff's version of disputed facts").

Considering the amended verified Complaint, the affidavits, and other evidence supporting jurisdiction, the court finds that Nucor has proven that SeverCorr has contacts with the forum related to the controversy such that imposition of specific personal jurisdiction is appropriate. First, the amended verified Complaint asserts that SeverCorr, through its agent John Bell, interfered with Nucor's business relations by contacting and hiring several of its key employees in South Carolina. The contacts within the forum of a party's agent, partner, or joint venturer may, in appropriate circumstances, be attributed to the party for purposes of establishing jurisdiction. *Rush v. Savchuk,* 444 U.S. 320, 332, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980) ("[T]he parties' relationships with each other may be significant in evaluating their ties to the forum"); *Grand Entm't Group v. Star Media Sales, Inc.,* 988 F.2d 476, 483 (3d Cir.1993) ("[A]ctivities of a party's agent may count toward the minimum contacts necessary to support jurisdiction."). At the time Bell allegedly solicited and recruited Nucor employees to join SeverCorr, Bell was working for SeverCorr as its Executive Vice President and General Manager of Operations; accordingly, Bell was acting as SeverCorr's agent such that Bell's contacts with the forum state are attributable to SeverCorr itself. Although the Complaint does not explicitly state that Bell contacted Nucor's employees *in South Carolina,* such a statement is hardly necessary where it is uncontested that the Nucor employees at issue both worked and lived in South Carolina. As discussed above, the court must "construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Combs,* 886 F.2d at 676. Accordingly, the court finds that SeverCorr's solicitation of Nucor's employees in South Carolina is a significant contact with the forum.

Further, certain of SeverCorr's written communications from Mississippi constitute "tortious conduct" occurring within South Carolina. Nucor offers as evidence of SeverCorr's contacts in South Carolina the letters Bell sent offering employment to Nucor employees.[4] These communications are the very acts of solici-

4. As Exhibit 6 to its Opposition to Defendants Motion, Nucor submits to the court three let-

tation which allegedly constitute the tortious interference in relations and misappropriation of trade secrets;[5] therefore, the court holds that these communications themselves are proof of SeverCorr's tortious conduct within South Carolina. *See Vishay Intertechnology, Inc. v. Delta Intern. Corp.*, 696 F.2d 1062, 1065 (4th Cir. 1982) (finding personal jurisdiction for slander and tortious interference with contract causes of action where defendant, at most, wrote three letters and initiated five telephone calls into forum state, but neither maintained a place of business in forum nor had an agent there nor entered into a contract with an entity from the forum); *First American First, Inc. v. National Ass'n of Bank Women*, 802 F.2d 1511, 1517 (4th Cir.1986) ("The allegedly defamatory letters, though written in and mailed from Illinois and distributed throughout the country, were nevertheless directed in their intended effect at the activities in Virginia of Virginia residents.").[6]

The amended verified Complaint alleges, and the evidence before the court suggests, that SeverCorr, through its agent Bell, intentionally and specifically directed communications into South Carolina for the purpose of enticing Nucor employees to join its employ and to solicit Nucor employees to misappropriate Nucor's trade secrets. Therefore, SeverCorr has sufficient minimum contacts with South Carolina to satisfy the first prong of the due process analysis.

### 2. Fair Play and Substantial Justice

Additionally, exercising personal jurisdiction over SeverCorr must not "offend traditional notions of fair play and substantial justice." *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (internal quotation marks omitted). In making this determination, "[a] court must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." *Id.* Further, the court must consider " 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the

ters from Bell/SeverCorr in Mississippi offering employment to Nucor employees.

5. If an employee has been induced to breach his duty of loyalty to his present or former employer, "[n]ot only may liability for such inducement be imposed upon the employee who is guilty of a breach of fiduciary duty, but it may also be imposed upon any others who have cooperated in or reaped the benefits of such a breach." Annotation, *Liability for inducing employee not engaged for definite term to move to competitor*, 24 A.L.R.3d 821. Thus, a company that hires its competitor's employees and then induces them to divulge their former employer's trade secrets, or aids or assists them to violate their trust, is liable to the former employer. *Id.* Accord, *Lowndes Products, Inc. v. Brower*, 259 S.C. 322, 337, 191 S.E.2d 761, 769 (1972) (per curiam); *Servo Corp. v. General Elec. Co.*, 337 F.2d 716, 725 (4th Cir.1964); *Colgate-Palmolive Co. v. Carter Prods.*, 230 F.2d 855, 864 (4th Cir.), *cert. denied*, 352 U.S. 843, 77 S.Ct. 43, 1 L.Ed.2d 59 (1956) ("One may not escape liability for appropriating the business secrets of another by employing one who has been entrusted with the secrets and permitting him to make use of them."); *Wilkes v. Pioneer Am. Ins. Co. of Ft. Worth, Tex.*, 383 F.Supp. 1135, 1142 (D.C.S.C.1974).

6. Nucor also asserts that because SeverCorr and Bell conspired to misappropriate its trade secrets, Bell's contacts with the forum are attributable to SeverCorr as Bell's co-conspirator. The court, however, need not determine whether sufficient evidence of a conspiracy has been established such that the contacts of Bell may attach to his alleged coconspirator SeverCorr. Rather, the court relies on the agency relationship created by employment to establish the contacts necessary to sustain personal jurisdiction over SeverCorr.

shared interest of the several States in furthering fundamental substantive social policies.' " *Id.* (quoting *World-Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. 559).

Considering the different factors listed above, the court finds that exercising jurisdiction over SeverCorr comports with the standards of fair play and substantial justice. South Carolina has a substantial interest in adjudicating disputes between a domestic corporation and another corporation. Nucor, as a corporation doing business in South Carolina, certainly has a substantial interest in seeking relief in the state in which it operates and where it was injured. Efficiency also dictates that the court retain jurisdiction because, presumably, most of the facts surrounding the controversy are most easily discoverable in South Carolina. Finally, although it may be burdensome for SeverCorr to defend a suit in South Carolina rather than in Mississippi, SeverCorr intentionally made the contacts with South Carolina sufficient to confer jurisdiction over it. Therefore, the court finds that there are no compelling reasons that render jurisdiction over SeverCorr in South Carolina unreasonable.

For the reasons as stated above, the court finds that Defendant SeverCorr, LLC has sufficient minimum contacts in South Carolina such that subjecting it to personal jurisdiction in this forum does not offend traditional notions of fair play and substantial justice. Accordingly, Defendants motion to dismiss SeverCorr from this action is denied.

**B. Defendants' Motion to Dismiss for Failure to State a Claim—Fed. R. Civ. P. 12(b)(6)**

Defendants also move that Counts II, III, and V—X be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failing to state a claim upon which relief may be granted. Defendants assert that Nucor's causes of actions for breach of duty of loyalty (III),[7] interference with contractual relations (V), unfair trade practices (VI), conspiracy (VII), conversion (VIII), unjust enrichment (IX), and imposition of a constructive trust (X) have been preempted by the South Carolina Trade Secrets Act ("SCTSA") and must be dismissed. Defendants also assert that Count II, breach of contract, should be dismissed to the extent it is based on the alleged breach of the Third Confidentiality Agreement, as this Agreement is void for lack of consideration.

A Rule 12(b)(6) motion should be granted only if, after accepting all well-pleaded allegations in the complaint as true, it appears certain that Plaintiff cannot prove any set of facts in support of its claims that entitles it to relief. *Edwards v. City of Goldsboro,* 178 F.3d 231, 244 (4th Cir. 1999). The complaint should not be dismissed unless it is certain that the plaintiff is not entitled to relief under any legal theory that might plausibly be suggested by the facts alleged. *Mylan Labs. Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993). Further, "[u]nder the liberal rules of federal pleading, a complaint should survive a motion to dismiss if it sets out facts sufficient for the court to infer that all the required elements of the cause of action are present." *Wolman v. Tose,* 467 F.2d 29, 33 n. 5 (4th Cir.1972). If, on a motion to dismiss for failure to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. Fed. R.Civ.P. 12(b).

7. Nucor amended its original Complaint following Defendants' Motion to Dismiss, and added the common law cause of action, breach of duty of loyalty. The court assumes Defendants would assert that this cause of action is also preempted by SCTSA.

**1. Preemption of Counts III, V—X by the South Carolina Trade Secrets Act**

The South Carolina Trade Secrets Act, enacted in 1997, expressly displaces tort, restitutionary, and other law of South Carolina providing civil remedies for misappropriation of a trade secret. The Act provides,

(A) Except as provided in subsections (B) and (C), this chapter displaces conflicting tort, restitutionary, and other law of this State providing civil remedies for misappropriation of a trade secret.

(B) This chapter does not affect:

(1) contractual remedies, whether or not based upon misappropriation of a trade secret or protection of a trade secret;

(2) the provisions of the South Carolina Tort Claims Act.

(C) Any and all other civil remedies that are not based upon misappropriation of a trade secret or upon protection against misappropriation of a trade secret are governed by the rules of procedure, rules of evidence, regulations, and the common law applicable to the administrative law tribunal or court where the action is filed.

S.C.Code § 39–8–110. No South Carolina case addresses the effect of the displacement provision of this Act; however, Defendants claim that the statute requires that all claims *related to* the misappropriation of a trade secret are preempted and must be dismissed. Accordingly, Defendants argue that Nucor's causes of action for breach of duty of loyalty, tortious interference with relations, unfair trade practices, conspiracy, conversion, unjust enrichment, and imposition of constructive trust—which all mention Bell and SeverCorr's alleged misappropriation of Nucor's trade secrets—are therefore preempted and must be dismissed.

The court, however, finds that the plain language of the Act is not as broad as Defendants claim. The Act only displaces those claims that seek to protect through the common law or other state law a right "equivalent" to the exclusive rights reserved to the owner of a trade secret. *See Trandes Corp. v. Guy F. Atkinson Co.,* 996 F.2d 655, 659 (4th Cir.1993). Defendants take the wrong approach by focusing their preemption analysis on the *conduct* alleged to support the causes of action. To determine whether a particular cause of action involves rights equivalent to those protected by the Trade Secrets Act, the elements of the causes of action should be compared, not the facts pled to prove them. *Id.* (discussing preemption of state remedies by § 106 of the Copyright Act, 17 U.S.C. § 106).

To state a cause of action under SCTSA where a former employee has misappropriated trade secrets, one South Carolina court used the following list of elements from *FMC Corp. v. Spurlin,* 596 F.Supp. 609, 613 (W.D.Pa.1984), and required the plaintiff to show:

(1) the existence of a trade secret;

(2) communicated in confidence by the plaintiff to the employee;

(3) disclosed by the employee in breach of that confidence;

(4) acquired by the defendant with knowledge of the breach of confidence; and

(5) used by the defendant to the detriment of the plaintiff.

*Woven Electronics Corp. v. The Advance Group, Inc.,* C.A. No.: 6:88–1424–6–3 (D.S.C.1989), later appeal, Nos. 89–1580 and 89–1588 (4th Cir. April 15, 1991) (unpublished). The first determination which must be made in a trade secrets case, therefore, is whether, in fact, there was a trade secret to be misappropriated. *Servo*

Corp. of America v. General Elec. Co., 393 F.2d 551, 555 (4th Cir.1968). As defined under the Act, "trade secret" means:

(a) information including, but not limited to, a formula, pattern, compilation, program, device, method, technique, product, system, or process, design, prototype, procedure, or code that: (i) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by the public or any other person who can obtain economic value from its disclosure or use, and (ii) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

(b) A trade secret may consist of a simple fact, item, or procedure, or a series or sequence of items or procedures which, although individually could be perceived as relatively minor or simple, collectively can make a substantial difference in the efficiency of a process or the production of a product, or may be the basis of a marketing or commercial strategy. The collective effect of the items and procedures must be considered in any analysis of whether a trade secret exists and not the general knowledge of each individual item or procedure.

S.C.Code § 39-8-20. In a SCTSA cause of action, the burden of proving the existence of a trade secret falls upon the plaintiff. *Lowndes Prods., Inc. v. Brower*, 259 S.C. 322, 329, 191 S.E.2d 761, 765 (S.C. 1972).

Nucor argues that even if parts of its claims for breach of duty of loyalty, conversion, unjust enrichment, constructive trust, conspiracy, unfair trade practices, and tortious interference are preempted by SCTSA, it may plead in the alternative, or assert alternative recoveries, in the event that certain information does not qualify as a trade secret under SCTSA. Although several courts have dismissed claims pled in the alternative based on the misappropriation of trade secrets,[8] the court in *Stone Castle Financial v. Friedman, Billings, Ramsey & Co.* pointed out that "where courts have found preemption on a motion to dismiss, they repeatedly establish that the information in issue-as alleged-constitutes trade secrets before reaching the preemption question." 191 F.Supp.2d 652, 658-659 (E.D.Va.2002). The court further explained that "unless it can be clearly discerned that the information in question constitutes a trade secret, the Court cannot dismiss alternative theories of relief as preempted by [Virginia's version of the uniform UTSA]." *Id.* at 659; *see Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.*, 295 F.Supp.2d 430, 437 (D.Del.2003).

The causes of action at issue, unlike a cause of action under SCTSA, are not dependant upon a finding that the misappropriated information constitutes "trade secrets." It is possible that, in breach of his duties, Bell disclosed confidential information that does not qualify as a "trade secret" and is therefore not protected by the SCTSA. In such a case, causes of action for breach of duty of loyalty,[9] tortious interference with rela-

8. *See, e.g., On-Line Techs. v. Perkin Elmer Corp.*, 141 F.Supp.2d 246, 260-61 (D.Conn. 2001) (dismissing unjust enrichment claim pursuant to Connecticut Uniform Trade Secrets Act's preemption provision "because ... [the] claim does not allege any ill-gotten gains other than those resulting from the misuse of confidential information"); *Glasstech, Inc. v. TGL Tempering Sys., Inc.*, 50 F.Supp.2d 722, 730 (N.D.Ohio 1999) (finding common law claims for misuse and misappropriation of trade secrets preempted by Ohio's trade secrets act).

9. "An employee has a duty to abide by his employer's instructions and policies and owes an implicit duty of loyalty to his employer to carry out those instructions and policies." *Young v. McKelvey*, 286 S.C. 119, 122, 333 S.E.2d 566, 567 (S.C.1985); *Lowndes Prod-*

tions,[10] unfair trade practices,[11] conspiracy,[12] conversion,[13] unjust enrichment,[14] and imposition of constructive trust[15] would provide remedies not available under the Act. *See, e.g., Combined Metals of Chicago Ltd. P'ship v. Airtek, Inc.*, 985 F.Supp. 827, 830 (N.D.Ill.1997) (holding breach of fiduciary duty claim not preempted where underlying information may not qualify as trade secrets). At this stage in the proceedings, the court cannot resolve any factual disputes as to what is or is not a trade secret. *Callaway Golf Co.*, 295 F.Supp.2d at 437. Accordingly, because only claims purporting to provide a remedy for the misappropriation of "trade secrets" are preempted by the South Carolina Trade Secrets Act, and because Nucor alleges facts that support the contested claims to the extent the misappropriated information is not classified as "trade secrets," the contested causes of action must survive Defendants' motion.

### 2. Dismissal of the Breach of Contract Cause of Action

Finally, Defendants assert that the Third Confidentiality Agreement is void

*ucts, Inc. v. Brower, et al.*, 259 S.C. 322, 191 S.E.2d 761 (S.C.1972) ("It is implicit in any contract for employment that the employee shall remain faithful to the employer's interest throughout the term of employment. An employee has a duty of fidelity to his employer.").

**10.** The elements for a cause of action for tortious interference with relations are: (1) the existence of a valid contract; (2) the wrongdoer's knowledge of the contract; (3) his or her intentional procurement of its breach; (4) absence of justification; and (5) damages. *Southern Contracting, Inc. v. H.C. Brown Constr. Co., Inc.*, 317 S.C. 95, 450 S.E.2d 602, 604 (1994). In its amended verified Complaint, Nucor has sufficiently alleged (1) the existence of valid Confidentiality Agreements (see below) and at-will employment contracts, (2) Bell and SeverCorr's knowledge of these contracts, and (3–4) their intentional and unjustified interference with these contracts and (5) the resulting damages to Nucor; accordingly, Nucor has stated a claim for tortious interference sufficient to survive a motion to dismiss.

**11.** South Carolina Unfair Trade Practices Act provides a remedy for "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." S.C.Code § 39–5–20.

**12.** Civil conspiracy consists of three elements: (1) a combination of two or more persons, (2) for the purpose of injuring the plaintiff, (3) which causes him special damages. *Vaught v. Waites*, 300 S.C. 201, 208, 387 S.E.2d 91, 95 (S.C.App.1989).

**13.** "Conversion is the unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of the condition or the exclusion of the owner's rights. To establish the tort of conversion, it is essential that the plaintiff establish either title to or right to the possession of the personal property." *Regions Bank v. Schmauch*, 354 S.C. 648, 667, 582 S.E.2d 432, 442 (S.C.App.2003) (*quoting Crane v. Citicorp Nat'l Servs., Inc.*, 313 S.C. 70, 437 S.E.2d 50 (1993)).

**14.** "The equitable doctrine of quantum meruit allows an aggrieved party to recover for unjust enrichment." *Columbia Wholesale Co., Inc. v. Scudder May N.V.*, 312 S.C. 259, 261, 440 S.E.2d 129, 130 (S.C.1994). To prevail on this theory, a plaintiff must establish the following three elements: (1) a benefit conferred by plaintiff upon the defendant; (2) realization of that benefit by the defendant; and (3) retention of the benefit by the defendant under circumstances that make it inequitable for her to retain it without paying its value. *QHG of Lake City, Inc. v. McCutcheon*, 360 S.C. 196, 202–203, 600 S.E.2d 105, 108 (S.C.App.2004).

**15.** A constructive trust results when circumstances under which property was acquired make it inequitable that it be retained by the one holding legal title; these circumstances include fraud, bad faith, abuse of confidence, or violation of a fiduciary duty which gives rise to an obligation in equity to make restitution. *Macaulay v. Wachovia Bank of South Carolina, N.A.*, 351 S.C. 287, 569 S.E.2d 371 (S.C.App.2002).

for lack of consideration, and moves that the breach of contract cause of action be dismissed to the extent it is based upon the alleged breach of this Agreement.[16]

The Third Confidentiality Agreement, which requires that Bell refrain from disclosing Nucor's confidential information within twenty years after the termination of his employment with Nucor (the "non-disclosure covenant"), defines "confidential information" as "all Inventions and all other business, technical and financial information [Bell] develop[s], learn[s] or obtain[s] during the term of [his] employment that relate to (i) the Company and its business, (ii) the technological process for the production of flat steel products through thin strip casting, and (iii) all confidential information now or hereafter owned by Castrip, LLC." This Agreement also requires Bell to refrain from "encourag[ing] or solicit[ing] any employee of [Nucor] to leave [Nucor] for any reason" for a period of one year after termination of his employment with Nucor (the "employee non-solicitation covenant"). The Agreement provides that in exchange for Bell's signature, Nucor will continue to employ him. Nucor provided no additional consideration to Bell in exchange for this Agreement.

By its own terms, the Third Confidentiality Agreement is governed by Indiana law. Under Indiana law, continued employment is sufficient consideration for an employee's post-employment negative covenants. *See Ackerman v. Kimball Int'l, Inc.*, 652 N.E.2d 507 (Ind.1995). Generally, under South Carolina choice of law principles, if the parties to a contract specify the law under which the contract shall be governed, the court will honor this choice of law. *Bazzle v. Green Tree Financial Corp.*, 351 S.C. 244, 569 S.E.2d 349, 358 (2002) ("Generally, if the terms of a contract are clear and unambiguous, this Court must enforce the contract according to its terms regardless of its wisdom or folly."); *see also Ellis v. Taylor*, 316 S.C. 245, 449 S.E.2d 487 (1994). However, a choice-of-law clause in a contract will not be enforced if application of foreign law results in a violation of South Carolina public policy. *Standard Register Co. v. Kerrigan*, 238 S.C. 54, 70–71, 119 S.E.2d 533, 541–42 (S.C.1961) ("Terms in a non-compete agreement may be construed according to the law of another state ... [b]ut if the resulting agreement is invalid as a matter of law or contrary to public policy in South Carolina, [South Carolina] courts will not enforce the agreement."); *see also Stonhard, Inc. v. Carolina Flooring Specialists, Inc.*, 366 S.C. 156, 159, 621 S.E.2d 352, 353 (S.C.2005). Accordingly, before applying Indiana's rule of contract construction, the court must first consider whether this rule violates South Carolina public policy.

At early common law, contracts in restraint of a man's right to exercise his trade or calling were void as against public policy. Modern courts, including South Carolina courts, still regard such contracts with high disfavor. The South Carolina Supreme Court has held that a covenant restricting the activities of an employee after the termination of his employment is not violative of public policy only if it is "[1] partial or restrictive in its operation, either as to time or place, [2] on some good consideration, and [3][is] reasonable, that is, it afford[s] only a fair protection to the interests of the party in whose favor it is made." *Standard Register*, 119 S.E.2d at 539. Under South Carolina law, a post-employment "covenant not to compete may be enforced where the consideration is based solely upon the at-

16. Defendants do not challenge the validity of the First and Second Confidentiality Agreements created, respectively, on October 19, 1987 and November 23, 1999.

will employment itself," *Riedman Corporation v. Jarosh,* 290 S.C. 252, 349 S.E.2d 404, 404 (S.C.1986); however, "when a covenant is entered into after the inception of employment, *separate consideration,* in addition to continued at-will employment, is necessary in order for the covenant to be enforceable." *Poole v. Incentives Unlimited, Inc.,* 345 S.C. 378, 548 S.E.2d 207, 209 (2001) (emphasis added).

In this case, it is uncontested that the only consideration given to Bell at the time he entered the Third Confidentiality Agreement was his continued at-will employment; Nucor provided no additional, separate consideration to Bell in exchange for his promise. Although, Indiana law would consider continued employment "sufficient consideration" for a non-compete covenant, South Carolina law would not. The South Carolina Supreme Court has explained that "[t]he reason that contracts against competition are held to be unenforceable unless they meet certain criteria, is that they constitute a restraint upon trade *which is against public policy.*" *Somerset v. Reyner,* 233 S.C. 324, 104 S.E.2d 344 (S.C.1958) (emphasis added). Accordingly, enforcing a covenant against competition which does not meet the "certain criteria" prescribed by South Carolina law would be contrary to the clear public policy of South Carolina. The court therefore finds that Indiana law is contrary to South Carolina public policy and should not be applied in this case.

Nucor argues that, although South Carolina law requires additional consideration above and beyond continued employment in order for non-compete covenants to be enforceable, *non-disclosure* and *employee non-solicitation* covenants, such as ones at issue in this case, are not subject to this rule. Nucor contends that *Poole,* which stands for the rule that continued employment is not adequate consideration for non-compete covenants, is based on the policy views that (1) restraints on competition can lead to monopolies and, ultimately, harm to the free market and (2) an employee should not lightly be prohibited from making a living wage. *Poole,* 345 S.C. at 378, 548 S.E.2d at 209. Nucor asserts that covenants against solicitation and disclosure of confidential information are not restraints on competition and are therefore not subject to the same policy underpinnings as non-compete covenants. Accordingly, Nucor argues that the continuation of employment is sufficient consideration for the covenants in the Third Confidentiality Agreement.

The court does not agree that the covenants at issue are not subject to the same requirements as non-compete covenants. In *Carolina Chemical Equipment Co., Inc. v. Muckenfuss,* the South Carolina Court of Appeals held that a non-disclosure covenant which forbids an employee from using knowledge gained during the course of employment is, for all purposes, a covenant not to compete; as such, it is subject to the same heightened consideration requirements as a non-compete covenant. 322 S.C. 289, 293–294, 471 S.E.2d 721, 723 (S.C.App.1996) ("Despite its designation as a 'Covenant Not to Divulge Trade Secrets,' this section would substantially restrict Muckenfuss's competitive employment activities. Because it basically has the effect of a covenant not to compete, we must subject it to the same scrutiny as a covenant not to compete."). In this case, the non-disclosure covenant in the Third Confidentiality Agreement does not identify any specific information as a trade secret; rather, the Agreement defines "confidential information" so broadly that virtually all of the information Bell acquired during his employment would fall within its definition. *See id.; Service Centers of Chicago, Inc. v. Minogue,* 180 Ill.App.3d 447, 129 Ill.Dec. 367, 372, 535 N.E.2d 1132, 1137 (1989) ("By defining confidential informa-

tion as essentially all of the information provided … the confidentiality agreement amounts … to a post-employment covenant not to compete which is completely unrestricted in duration or geographical scope."); *cf. AMP Inc. v. Fleischhacker,* 823 F.2d 1199 (7th Cir.1987) (noting the risk plaintiffs run by producing long lists of general areas of information which contain unidentified trade secrets instead of identifying specific trade secrets). For all intents and purposes, such a broadly written non-disclosure covenant not only forbids Bell from divulging trade secrets, but also forbids Bell from engaging in any employment similar to his employment with Nucor. For this reason, South Carolina courts would hold the non-disclosure covenant here to the same heightened standard as any post-employment non-compete covenant. *See Muckenfuss,* 322 S.C. at 296, 471 S.E.2d at 725. This court has also held a post-employment agreement not to solicit employees or customers to the same standards as a covenant not to compete. *See Rockford Mfg., Ltd. v. Bennet,* 296 F.Supp.2d 681, 690 (D.S.C.2003). Because they function as non-compete covenants, the promise of continued employment is not adequate consideration for the non-disclosure and employee non-solicitation covenants contained within the Third Confidentiality Agreement. For this reason, and considering the evidence in the light most favorable to Nucor, the court must find that the Third Confidentiality Agreement is not supported by adequate consideration and is therefore unenforceable.

The court notes that the amended verified Complaint alleges that Bell breached the First and Second Confidentiality Agreements, as well as the Third. These first two Agreements, which are attached to the amended verified Complaint, appear to be valid. Their plain language indicates that Nucor provided valuable consideration, in the amount of ten dollars, in exchange for Bell's acceptance of their terms. Further, unlike the Third Agreement's broad and inclusive definition of "confidential information," the First and Second Confidentiality Agreements limit the definition of "trade secrets and confidential information" to "plant design, specifications and layout; equipment design, specifications and layout; product design and specifications; manufacturing processes, procedures and specifications; data processing programs; research and development projects; marketing, pricing, cost and financial data; and which have not been made available to the public by Nucor." Therefore, at this juncture, the court finds that the First and Second Confidentiality Agreements are non-disclosure covenants made in exchange for valid consideration. Accordingly, the amended verified Complaint states a claim for breach of contract to the extent it is based on the alleged breaches of these first two Agreements. However, as discussed above, the Third Confidentiality Agreement, which is a non-compete covenant based on insufficient consideration, is invalid as against South Carolina public policy. Accordingly, the court dismisses Nucor's breach of contract claim to the extent it is based on the alleged breach of the Third Confidentiality Agreement.

## CONCLUSION

Accordingly, it is hereby **ORDERED** that, to the extent the breach of contract cause of action is premised on the alleged breach of the Third Confidentiality Agreement, such cause of action is **DISMISSED.** It is further **ORDERED** that Defendants John Bell and SeverCorr, LLC's Motion to Dismiss is otherwise **DENIED.**

**AND IT IS SO ORDERED.**